1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

10
11

| | |
|---|---|
| THE ESTATE OF JOSE ALFREDO CASTRO GUTIERREZ, by and through its successor in interest ANNA CLARETH OJEDA BENITEZ, G.D. and A.C., minors through their guardian *ad litem* ANA CLARETH OJEDA BENITEZ, and ANA CLARETH OJEDA BENITEZ as an individual,<br><br>                                   Plaintiffs,<br><br>v.<br><br>ISAI CASTILLO, in his individual capacity, DAVID NISLEIT, in his individual capacity, CITY OF SAN DIEGO, and DOES 1-23,<br><br>                                   Defendants. | Case No.:  21-cv-01292-H-LL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE**<br><br>[Doc. No. 13.] |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

On July 9, 2021, Plaintiffs the Estate of Jose Alfredo Castro Gutierrez, by and through its successor in interest Anna Clareth Ojeda Benitez ("the Estate"); G.D. and A.C., minors, by and through their guardian ad litem, Ana Clareth Ojeda Benitez; and Ana Claretha Ojeda Benitez, (collectively, "Plaintiffs"), filed a complaint against Defendants Isai Castillo, David Nisleit, and the City of San Diego, (collectively, "Defendants"). (Doc. No. 1.) On August 7, 2021, Plaintiffs filed their first amended complaint. (Doc. No. 7.)  On September 1, 2021, Defendants filed the present motion to dismiss for failure to state a

claim and motion to strike. (Doc. No. 13.) On September 27, 2021, Plaintiffs filed a response in opposition to Defendants' motion. (Doc. No. 16.) On October 5, 2021, Defendants filed their reply. (Doc. No. 18.) On October 28, 2021, the Court submitted the motion on the parties' papers pursuant to Local Rule 7.1(d)(1). (Doc. No. 20.) For the following reasons, the Court grants in part and denies in part Defendants' motion to dismiss and motion to strike.

## Background

The following factual background is taken from the allegations in Plaintiffs' amended complaint. The Decedent, Jose Alfredo Castro Gutierrez, was a resident of San Diego at the time of his death. (Doc. No. 7, Am. Compl. ¶ 6.) Plaintiff Ana Claretha Ojeda Benitez is Mr. Castro's widow, and Plaintiffs G.D and A.C. are Mr. Castro's children. (Id. ¶¶ 9, 11.) Defendant Nieslet was Chief of Police for the San Diego Police Department at the time relevant to this action. (Id. ¶ 13.) Defendant Isai Castillo was a police officer for the San Diego Police Department at the time relevant to this action. (Id. ¶ 13.) Defendant City of San Diego is a municipal entity and employer of Defendants Nieslet and Castillo. (Id. ¶¶ 12–14.)

On October 19, 2020, Jose Alfredo Castro Gutierrez was at his home when he experienced a mental health crisis. (Id. ¶¶ 19–20.) After attempting to calm Mr. Castro down along with other residents of Mr. Castro's home, Mr. Castro's landlady called 911 for help. (Id. ¶ 24.) On the call, Mr. Castro's landlady allegedly told the police dispatcher Mr. Castro did not have any weapons but Mr. Castro was holding a thin curtain rod. (Id.) In response, multiple police cars and at least eight San Diego police officers allegedly came to Mr. Castro's home. (Id. ¶ 25.) Mr. Castro's landlady allegedly was waiting outside the home to meet the officers but none of the officers stopped to ask her questions. (Id. ¶ 29.) Plaintiffs alleged no one else was inside the home with Mr. Castro who could be "in jeopardy." (Id. ¶ 30.) When the officers arrived, Mr. Castro was allegedly inside his home yelling "Get the police! Help!," and Mr. Castro's face looked "panicked." (Id. ¶ 31.)

Plaintiffs allege Defendant Castillo was one of the police officers who arrived on scene. (Id. ¶¶ 19, 27.) Defendant Castillo allegedly took charge and assigned the other officers on scene their responsibilities. (Id. ¶ 27.) One of the officers allegedly yelled loudly at Mr. Castro to come out of the house. (Id. ¶ 32.) Mr. Castro allegedly responded to the officer's command by running out of his home towards the officers, yelling "Ayuda," or "Help" in Spanish. (Id. ¶¶ 35, 37.) Plaintiffs allege one officer shot Mr. Castro with a round from a "beanbag" shotgun and another officer shot Mr. Castro with a taser in probe mode. (Id. ¶ 39.) Plaintiffs allege two other officers pulled out their tasers but did not use them. (Id. ¶ 45.) Plaintiffs allege Defendant Castillo then shot his firearm multiple times at Mr. Castro, killing Mr. Casto. (Id. ¶ 41.)

On August 7, 2021, Plaintiffs filed an amended complaint against Defendants for: (1) excessive use of force pursuant to 42 U.S.C. §1983; (2) wrongful death pursuant to 42 U.S.C. §1983; (3) failure to properly train pursuant to 42 U.S.C. §1983; (4) a Monell[1] claim pursuant to 42 U.S.C. §1983; (5) wrongful death in violation of Cal. Civ. Proc. Code §377.60, et seq.; (6) battery; (7) violation of the Tom Bane Civil Rights Act ("Bane Act"), Cal. Civ. Code §52.1; (8) violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §12101, et seq.; and (9) violation of the Rehabilitation Act, 29 U.S.C. §794(a). (Doc. No. 7, Am. Compl.) By the present motion, Defendants move to dismiss all or portions of Plaintiffs' second (2) through fifth (5) and six (6) through ninth (9) claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 13-1.) Defendants also move to strike portions of Plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(f). (Id.)

## Discussion

**I.    Legal Standards**

    **A.    Rule 12(b)(6) Motion to Dismiss**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal

---

[1] Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658 (1978).

21-cv-01292-H-LL

sufficiency of the pleadings and allows a court to dismiss a complaint if the plaintiff has failed to state a claim upon which relief can be granted.  See Conservation Force v. Salazar, 646 F.3d 1240, 1241 (9th Cir. 2011).  Federal Rule of Civil Procedure 8(a)(2) requires that a pleading stating a claim for relief containing "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The function of this pleading requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A complaint will survive a Rule 12(b)(6) motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557). Accordingly, dismissal for failure to state a claim is proper where the claim "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).

In reviewing a Rule 12(b)(6) motion to dismiss, a district court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the claimant. See Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am., 768 F.3d 938, 945 (9th Cir. 2014). A court does not need to accept "legal conclusions" as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). It is improper for a court to assume the claimant "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

B.     Rule 12(b) Motion to Strike

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Sidney–Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983). "Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." Neilson v. Union Bank of Cal., N.A., 290 F. Supp. 2d 1101, 1152 (C.D. Cal. Oct. 20, 2003); see also Neveau v. City of Fresno, 392 F. Supp. 2d 1159, 1170 (E.D. Cal. July 15, 2005) ("Motions to strike are disfavored and infrequently granted."). In reviewing a motion to strike, the court must view the pleadings in the light most favorable to the non-moving party and accept the factual allegations as true. See Kelly v. Kosuga, 358 U.S. 516, 516 (1959); PHL Variable Ins. Co. v. Clifton Wright Family Ins. Trust, 2010 WL 1445186, at *1 (S.D. Cal. Apr. 12, 2010).

## II.    Rule 12(b)(6) Analysis

### A.    Plaintiffs' § 1983 Claim for Wrongful Death

In the amended complaint, Plaintiffs allege a claim pursuant to 42 U.S.C. § 1983 for wrongful death by the Estate against Defendant Castillo. (Doc. No. 7, Am. Compl. ¶¶ 60–67.) Defendants argue the Estate cannot bring a § 1983 survival action claim for wrongful death because a wrongful death claim is not vested in the Estate. (Doc. No. 18 at 2–3.)

Section 1983 "creates a cause of action for 'the deprivation of any right[], privilege[], or immunit[y] secured by the Constitution' by individuals acting 'under color of law." Benavidez v. Cty. of San Diego, 993 F.3d 1134, 1144 (9th Cir. 2021). "To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." Id. (quoting Long v. Cty. of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006)).

"An objectively unreasonable use of force is constitutionally excessive and violates

the Fourth Amendment's prohibition against unreasonable seizure." <u>Torres v. City of Madera</u>, 648 F.3d 1119, 1123 (9th Cir. 2011). The reasonableness of a use of force is determined based on whether the defendant's actions were "objectively reasonable" in light of all the facts and circumstances." <u>Graham v. Conner</u>, 490 U.S. 386, 397 (1989). "The operative question in excessive force cases is 'whether the totality of the circumstances justifie[s] a particular sort of search or seizure.'" <u>Cty. of Los Angeles, California v. Mendez</u>, 137 S.Ct. 1539, 1546 (2017) (citation omitted).

"A claim under 42 U.S.C. § 1983 survives the decedent if the claim occurred before the decedent's death, and if state law authorizes a survival action." <u>Tatum v. City & Cty. of San Francisco</u>, 441 F.3d 1090, 1093 n.2 (9th Cir. 2006) (citing <u>Moreland v. Las Vegas Metro. Police Dep't</u>, 159 F.3d 365, 369 (9th Cir. 1998)q). Under California's survival action statute, "if an injury giving rise to liability occurs before a decedent's death, then the claim survives to the decedent's estate." <u>Tatum</u>, 411 F.3d at 1093 n.2 (citing Cal. Civ. Proc. Code § 377.30). In a § 1983 survival action claim where the decedent's death was caused by a violation of federal law, the decedent's estate can recover damages for pre-death pain and suffering, <u>Chaudhry v. City of Los Angeles</u>, 751 F.3d 1096, 1103 (9th Cir. 2014), and loss of life, <u>Valenzuela v. City of Anaheim</u>, 6 F.4th 1098, 1103 (9th Cir. 2021).

In the amended complaint, Plaintiffs' second cause of action is captioned "Wrongful Death (42 U.S.C. § 1983)." (Doc. No. 7, Am. Compl. ¶ 60.) Defendants argue that Plaintiff's second cause of action should be dismissed because the Estate cannot bring a wrongful death claim. (Doc. No. 13-1 at 5.) Generally, "in a survival action, a decedent's estate may recover damages on behalf of the decedent for injuries that the decedent sustained. In a wrongful death action, by comparison, the decedent's dependents may only pursue claims for personal injuries they have suffered as a result of the wrongful death." <u>J.K.J v. City of San Diego</u>, 2020 WL 738178, at *3 (S.D. Cal. Feb. 13, 2020) (quoting <u>Davis v. Bender Shipbuilding & Repair Co.</u>, 27 F.3d 426, 429 (9th Cir. 2020)). In their opposition to Defendants' motion, Plaintiffs agree with Defendants that their second cause of action is miscaptioned and represent they will change the caption to "Survival Action"

when filing the amended complaint. (Doc. No. 16 at 3 n.1.) Plaintiffs then state the "second cause of action for wrongful death is a survival claim brought by the Estate." (Id. at 2.) As a result, the Court will analyze Plaintiffs' second cause of action as a survival action brought by the Estate.

Next, Defendants argue Plaintiffs' second cause of action should be dismissed because the Estate cannot assert a survival action claim for "wrongful death." (Doc. No. 18 at 2.) Defendants interpret Plaintiffs second cause of action as a § 1983 survival action claim based on a violation of California's wrongful death statute, Cal. Civ. Proc. Code § 377.60. (Id.) In the amended complaint, Plaintiffs allege Defendant Castillo violated "Mr. Castro's Fourth Amendment rights" and "used excessive and unnecessary force, causing the untimely and wrongful death of Mr. Castro." (Doc. No. 7, Am. Compl. 62–63.) Plaintiffs' second cause of action is a § 1983 survival action claim based on an alleged violation of Mr. Castro's Fourth Amendment rights by Defendant Castillo for Mr. Castro's pre-death pain and suffering and hedonic damages. Such claim can properly be brought by the Estate under Chaudhry, 751 F.3d at 1103, and Valenzuela, 6 F.4th at 1103.

In the amended complaint, Plaintiffs allege that on October 19, 2020, Mr. Castro experienced a mental health crisis, and Mr. Castro's landlady called the police for assistance. (Doc. No. 7, Am. Compl. ¶¶ 19, 24.) Plaintiffs allege Defendant Castillo responded to the 911 call, and shot and killed Mr. Castro within a minute of arriving on the scene. (Id. ¶ 41.) Plaintiffs allege that when Defendant Castillo shot Mr. Castro, Mr. Castro was calling for help, was unarmed except for a thin shower rod, and that there were no civilians near Mr. Castro "in jeopardy." (Id. ¶¶ 24, 37, 42.) Plaintiffs further allege there were at least eight officers on scene; the officers on scene had access to non-lethal weapons, including a beanbag shotgun, taser, and K9; and at least two other officers used non-lethal force on Mr. Castro before Defendant Castillo shot Mr. Castro. (Id. ¶¶ 39, 40, 44–45.) Plaintiffs allege Mr. Castro suffered "emotional distress" and "pain and suffering" due to Defendant Castillo's actions. (Id. ¶ 65.) Plaintiffs have alleged sufficient facts to state a claim for a § 1983 survival action claim based on an alleged violation of Mr. Castro's

Fourth Amendment rights. Defendants' arguments are better suited for a motion for summary judgment when the record is more fully developed. As a result, the Court declines to dismiss the Estates' § 1983 claim for wrongful death.

### B. Plaintiffs' § 1983 Claim for Failure to Properly Train

In the amended complaint, Plaintiffs allege a claim pursuant to 42 U.S.C. § 1983 for failure to properly train against Defendant Nisleit. (Doc. No. 7, Am. Compl. ¶¶ 68–89.) Defendants argue the individual Plaintiffs' failure to properly train claim should be dismissed because only the Estate can bring a claim under § 1983. (Doc. No. 13-1 at 7.) Defendants also argue the Estate's failure to properly train claim fails because the Estate has not adequately alleged that Defendant Nisleit had an obligation to train officers on certain procedures or that there was a connection between Defendant Nisleit's failure to train and Mr. Castro's constitutional deprivation. (Id.)

Under § 1983, a supervisor can be held liable in his or her individual capacity if (1) the supervisor was "person[ally] involve[d] in the constitutional deprivation," or (2) there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Hansen v. Black, 885 F.2d 642, 645–46 (9th Cir. 1989). To establish supervisory liability for failure to train, a plaintiff must allege that the supervisory defendant "was deliberately indifferent to the need to train subordinates, and the lack of training actually caused the constitutional harm or deprivation of rights." Flores v. Cty. of Los Angeles, 758 F.3d 1154, 1159 (9th Cir. 2014) (citing Connick v. Thompson, 563 U.S. 51, 51–52 (2011)).

A "pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick, 563 U.S. at 62. However, it is not necessary to allege a pattern of similar violations to show "deliberate indifference" when "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." City of Canton v.

Harris, 489 U.S. 378, 390 (1989). "Although Canton and Connick discuss municipal liability for failure to train, the Ninth Circuit applies the same standard for supervisory officials sued in their individual capacity." Estate of Silva v. City of San Diego, 2020 WL 6946011, at *14 (S.D. Cal. Nov. 25, 2020) (citing Flores, 758 F.3d at 1159).

First, Defendants argue that a § 1983 claim can only be maintained by the Estate not the individual Plaintiffs. (Doc. No. 13-1 at 5–6.) "Fourth Amendment rights are personal rights which…may not be vicariously asserted." Moreland v. Las Vegas Metropolitan Police Dep't, 159 F.3d 365, 369 (9th Cir. 1988) (quoting Alderman v. United States, 397 U.S. 165, 174 (1969)). "Thus, the general rule is that only the person whose Fourth Amendment rights were violated," here Mr. Castro, "can sue to vindicate those rights." Moreland, 159 F.3d at 369 (citing Smith v. City of Fontana, 818 F.2d 1411, 1417 (9th Cir. 1987)). In their opposition to Defendants' motion, Plaintiffs state they will amend their complaint to reflect that their §1983 failure to train claim is "maintained by the Estate only, and not by the individual plaintiffs." (Doc. No. 16 at 5 n.2.) As a result, the Court dismisses Plaintiffs' § 1983 failure to train claim brought by the individual Plaintiffs without leave to amend.

Second, Defendants argue Plaintiffs have only made conclusory allegations about Defendant Nisleit's obligation to train officers, including Officer Castillo, in de-escalation, dealing with the mentally ill, and using a firearm. (Doc. No. 13-1 at 7.) Defendants argue Plaintiffs references to nationwide statistics about fatal police shootings and to three San Diego police officer involved shootings of individuals with mental illnesses are insufficient to show Defendant Nisleit was deliberately indifferent to the need to train his subordinates. (Id.) In response, Plaintiffs argue Defendant Nisleit was on notice of a failure to train based on the multiple past incidents of the use of excessive force on the mentally ill by the San Diego police officers and, under Canton, a single incident can establish liability for failure to train. (Doc. No. 16 at 4–5.)

In the amended complaint, Plaintiffs allege Defendant Nisleit failed to train officers on "how to properly use firearms," "on the proper way to deal with the mentally ill to avoid

fatal confrontations," and "on de-escalation tactics." (Doc. No. 7, Am. Compl. ¶¶ 72–73, 75–76.) Plaintiffs allege using firearms is "part of the scope of [officers] employment" and interacting with individuals with mental illnesses is "a recurring situation police officers must face every day." (Id. ¶ 72) Plaintiffs also cite to two prior cases where San Diego police officer's shot and killed "persons in psychiatric crisis." (Id. ¶ 76.) Plaintiffs allege the officers on scene, including Officer Castillo, did not use proper methods of interacting with Mr. Castro when he was experiencing a mental health crisis, and unnecessarily used lethal force against Mr. Castro. (Id. ¶¶ 36, 40). Plaintiffs have sufficiently alleged the nature of Defendant Nisleit's deficient training, that a pattern of constitutional violations occurred to put Defendant Nisleit on notice about the deficient training, and that there is a causal connection between Defendant Nisliet's failure to train and Mr. Castro's constitutional violation. As a result, the Court declines to dismiss Plaintiffs' § 1983 failure to properly train claim against Defendant Nisliet. Defendants' arguments are better suited for a motion for summary judgment when the record is more fully developed.

C.    Plaintiffs' § 1983 Monell Claim

In the amended complaint, Plaintiffs allege a Monell claim pursuant to 42 U.S.C. § 1983 by all Plaintiffs against Defendant City of San Diego. (Doc. No. 7, Am. Compl. ¶¶ 68–89.) Defendants argue Plaintiffs' Monell claim should be dismissed with prejudice because only the Estate can bring a claim under § 1983 and Plaintiffs alleged insufficient facts. (Doc. No. 13-1 at 8–9.)

"[A] municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell, 436 U.S. at 691; see also Castro v. Cty. of Los Angeles, 833 F.3d 1060, 1073 (9th Cir. 2016). "A municipality may be held liable under § 1983 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts injury.'" Burke v. Cty. of Alameda, 586 F.3d 725, 734 (9th Cir. 2009) (quoting Monell, 436 U.S. at 694).

"To establish municipal liability under § 1983, a plaintiff 'must show that (1) she was deprived of a constitutional right; (2) the County had a policy; (3) the policy amounted

to a deliberate indifference to her constitutional right; and (4) the policy was the moving force behind the constitutional violation.'" <u>Burke</u>, 586 F.3d at 734 (quoting <u>Mabe v. San Bernardino Cty., Dep't of Pub. Soc. Servs.</u>, 237 F.3d 1011, 1110–11 (9th Cir. 2001)). "[P]olicies can include written policies, unwritten customs and practices, failure to train municipal employees on avoiding certain obvious constitutional violations, and, in rare instances, single constitutional violations are so inconsistent with constitutional rights that even such a single instance indicates at least deliberate indifference of the municipality." <u>Benavidez</u>, 993 F.3d at 1153 (citation omitted).

A widespread "custom or practice" must be so "persistent" that it constitutes a "permanent and well settled city policy" and "constitutes the standard operating procedure of the local government entity." <u>Trevino v. Gates</u>, 99 F.3d 911, 918 (quoting <u>Monell</u>, 136 U.S. at 691); <u>Gillette v. Delmore</u>, 979 F.3d 1342, 1346 (9th Cir. 1992). "A custom or practice can be supported by evidence of repeated constitutional violations which went uninvestigated and for which the errant municipal officers went unpunished." <u>Hunter v. Cty. of Sacramento</u>, 652 F.3d 1225, 1236 (9th Cir. 2011); <u>Nehad v. Browder</u>, 929 F.3d 1125, 1141 (9th Cir. 2019).

"As to the single instances category, generally, a single instance of unlawful conduct is insufficient to state a claim for municipal liability under section 1983." <u>Benavidez</u>, 993 F.3d at 1153. "Single acts may trigger municipal liability where 'fault and causation' were clearly traceable to a municipality's legislative body or some other authorized decisionmaker." <u>Id.</u> "Where, for example, a 'city has armed its officers with firearms[,]…the need to train officers in the constitutional limits on the use of deadly force can be said to be 'so obvious,' that failure to do so could properly be characterized as deliberate indifference to constitutional rights.'" <u>Id.</u> (quoting <u>Canton</u>, 489 U.S. at 390 n.10).

First, Defendants argue that a <u>Monell</u> claim can only be maintained by the Estate not the individual Plaintiffs. (Doc. No. 13-1 at 8.) In their opposition to Defendants' motion, Plaintiffs state that they will amend their complaint so that the <u>Monell</u> claim is "maintained by the Estate only, and not by the individual plaintiffs." (Doc. No. 16 at 5 n.2.)

1  Accordingly, the Court dismisses Plaintiffs' <u>Monell</u> claim brought by the individual

2  Plaintiffs without leave to amend. <u>See</u> <u>Moreland</u>, 159 F.3d at 369 (9th Cir. 1988) (quoting

3  <u>Alderman</u>, 397 U.S. at 174) ("Fourth Amendment rights are personal rights which…may

4  not be vicariously asserted.").

5       Second, Defendants argue that Plaintiffs have not sufficiently alleged a policy by the

6  Defendant City of San Diego that resulted in a violation of Mr. Castro's constitutional

7  rights. (Doc. No. 13-1 at 9). In the amended complaint, Plaintiffs allege Defendant City of

8  San Diego had a policy of "providing inadequate training regarding use of force…and de-

9  escalation," "inadequately supervising training, controlling, assigning, and disciplining

10  city officers," and "maintaining grossly inadequate procedures for reporting, supervising,

11  investigating, reviewing, disciplining, and controlling misconduct by City officers." (Doc.

12  No. 7, Am. Compl. ¶ 91.) Plaintiffs cite two previous shootings involving San Diego police

13  officers that Plaintiffs allege illustrate a "history of ratifying the wrongful conduct of its

14  officers." (<u>Id.</u> ¶ 93.)  Plaintiffs also allege Defendant City of San Diego had a "custom and

15  practice of not properly utilizing and requesting the specialized services of PERT." (<u>Id.</u> ¶

16  92.) Defendants cite one previous shooting of a person suffering from mental illness where

17  San Diego police officers acted without waiting for PERT professionals to arrive. (<u>Id.</u> ¶

18  76.) Plaintiffs allege that because this custom and practice, "Defendant Castillo chose not

19  to request assistance from PERT" when interacting with Mr. Castro and that "a trained

20  PERT technician would have been able to defuse the situation instead of escalating it."

21  (<u>Id.</u>) Plaintiffs' allegations are sufficient to allege a <u>Monell</u> claim by the Estate against

22  Defendant City of San Diego. The Court declines to dismiss the Estate's <u>Monell</u> claim.

23  Defendants' arguments are better suited for a motion for summary judgment when the

24  record is more fully developed.

25       D.   <u>Plaintiffs' Wrongful Death Claim</u>

26       In the amended complaint, the individual Plaintiffs allege wrongful death claims

27  pursuant to Cal. Civ. Proc. Code § 377.60 against all Defendants. (Doc. No. 7, Am. Compl.

28  ¶¶ 96–112.) Defendants argue Plaintiffs' wrongful death claim against Defendant Nisleit

should be dismissed because Plaintiffs have not alleged any "negligent acts by Chief Nisleit" that led to Mr. Castro's death. (Doc. No. 13-1 at 10.) The Court agrees. In the amended complaint, Defendant Nisleit is not mentioned in any allegations related to Plaintiffs' wrongful death claim. (Doc. No. 7, Am. Compl. ¶¶ 96–112.) Plaintiffs also did not respond to Defendants' argument in their opposition to Defendant's motion. (Doc. No. 16.) As a result, the Court dismisses Plaintiffs' wrongful death claim against Defendant Nisleit with leave to amend.

### E.   Plaintiffs' Bane Act Claim

In the amended complaint, Plaintiffs allege a violation of the Bane Act, Cal. Civ. Code § 52.1, by the Estate against all Defendants. (Doc. No. 7, Am. Compl. ¶¶ 122–131.) Defendants argue Plaintiffs failed to allege facts sufficient to establish a violation of the Bane Act by Defendants Nisleit and Castillo, and failed to allege statutory authority for Defendant City of San Diego to be held vicariously liable for the actions of Defendants Nisleit and Castillo. (Doc. No. 13-1 at 10–13.)

The Bane Act provides a private cause of action against anyone who "interferes by threats, intimidation, or coercion or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by an individual or individuals of rights secured by the Constitution of laws of the United States, or laws and rights secured by the constitution or laws of California." Cal. Civ. Code § 52.1(b). "To prevail on a Bane Act claim, a plaintiff must demonstrate: 1) an act of interference with a legal right by 2) intimidation, threats or coercion." Russell v. City and Cty. of San Francisco, 2013 WL 2447865, at *15 (N.D. Cal. 2013). "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion') tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." Austin B. v. Escondido Union School Dist., 57 Cal. Rptr. 3d 454, 472 (2007) (citing Jones v. Kmart Corp., 949 P.2d 941 (1998)).

"[T]o state a Bane Act claim, [p]laintiff must allege [d]efendants specifically

intended to violate [p]laintiff's constitutional rights." <u>McAdams v. City of Newport Beach</u>, 2019 WL 6736919, at *2 (C.D. Cal. 2019); <u>see also</u> <u>Reese v. Cty. of Sacramento</u>, 888 F. 3d 1030, 1043 (9th Cir. 2018) (holding that in the context of an excessive force claim, "the Bane Act requires a "specific intent to violate the arrestee's right to freedom from unreasonable seizure"). When the "constitutional violation that allegedly occurred is excessive force, specific intent may be shown by alleging [d]efendants intended not only the force used, but also 'its character as more than necessary under the circumstances.'" <u>McAdams</u>, 2019 WL 6736919, at *2 (quotations omitted) (quoting <u>Reese</u>, 888 F.3d at 1045). "In excessive force cases… § 52.1 does not require proof of coercion beyond that inherent in the underlying violation." <u>Rodriguez v. Cty. of Los Angeles</u>, 891 F.3d 776, 802 (9th Cir. 2018).

First, Defendants argue Plaintiffs have failed to allege a Bane Act violation by Defendant Nisleit. (Doc. No. 13-1 at 11.) In their opposition to the motion to dismiss, Plaintiffs state they "do not oppose the motion as to the dismissal of Chief Nisleit from the seventh cause of action." (Doc. No. 16 at 8 n.3.) As a result, the Court dismisses Plaintiffs' Bane Act claim against Defendant Neislet without leave to amend.

Second, Defendants argue Plaintiffs have failed to allege a Bane Act violation by the Estate against Defendant Castillo. (Doc. No. 13-1 at 11.) Defendants argue Plaintiffs have not sufficiently alleged Defendant Castillo had the specific intent required under the Bane Act to violate Mr. Castro's rights. (<u>Id.</u>) The Court disagrees. In the amended complaint, Plaintiffs allege that when the officers arrived on scene, Mr. Castro was experiencing a mental health crisis, was unarmed except for a thin curtain rod, and was screaming for help. (Doc. No. 7, Am. Compl. ¶ 19, 24, 34.) Plaintiffs allege Mr. Castro's landlady told the police dispatcher when she called 911 that Mr. Castro was unarmed except for the curtain rod. (<u>Id.</u> ¶ 24). Plaintiffs allege Defendant Castillo yelled at Mr. Castro to come out of his home, and Mr. Castro responded by running towards the officers yelling "Ayuda" or "Help" in Spanish. (<u>Id.</u> ¶ 37.) Plaintiffs allege that at least eight officers were on the scene. (Id. ¶ 25.) Plaintiffs allege two of the officers used non-lethal force against Mr. Castro and

at least three other officers had their tasers out. (Id. ¶ 39–40). Plaintiffs allege Defendant Castillo then shot and killed Mr. Castro. (Id. ¶ 40). Plaintiffs have alleged sufficient facts to support that the amount of force used by Defendant Castillo could be considered "more than necessary under the circumstances" to satisfy the specific intent requirement for a Bane Action violation. See Reese, 888 F.3d at 1045. As a result, the Court declines to dismiss Plaintiffs' Bane Act claim against Defendant Castillo. Instead, Defendants' arguments are better suited for a motion for summary judgment when the record is more fully developed.

Finally, Defendants argue Plaintiffs' Bane Act claim is deficient against Defendant City of San Diego because Plaintiffs did not allege what statue Defendant City of San Diego as a public entity can be held liable under. (Doc. No. 13-1 at 12–13.) In the amended complaint, Plaintiff allege "Defendant Castillo was acting within the course and scope of [his] employment with Defendant City of San Diego" when he allegedly used excessive force against Mr. Castro, and so "the City is responsible" for Defendant Castillo's actions. (Doc. No. 7, Am. Compl. ¶ 127.) In the opposition to the motion to dismiss, Plaintiffs cite California Government Code section 815.2 as the basis for Defendant City of San Diego's vicarious liability. (Doc. No. 16 at 8.) California Government Code section 815.2(a) provides that "a public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against the employee." Cal. Gov. Code § 815.2(a). Under California Government Code section 815.2(a), municipal defendants may be held vicariously liable for an officer's violation of the Bane Act. Berns v. City of Redwood City, 737 F.Supp.2d 1047, 1065 (N.D. Cal. Aug. 25, 2010) ("[M]unicipal defendants may be held vicariously liable for an officer's violation of section 52.1. Cal. Gov't Code § 815.2(a)."); see also Berman v. Sink, 2013 WL 2360899, at *13 (E.D. Cal. May 29, 2013); Reynolds v. Cty. of San Diego, 224 F.Supp.3d 1034, 1062 (S.D. Cal. Oct. 3, 2016), reversed in part on other grounds, 716 Fed. Appx. 668 (9th Cir. 2018). Because the Court has declined to dismiss Plaintiff's Bane Act claim against

Defendant Castillo, the Court also declines to dismiss Plaintiffs' Bane Act claim against Defendant City of San Diego.

### F.   Plaintiffs' ADA and Rehabilitation Act Claims

In the amended complaint, Plaintiffs alleges violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the Rehabilitation Act, 29 U.S.C. § 794(a), by the Estate against Defendant City of San Diego. (Doc. No. 7, Amend. Compl. ¶¶ 132–161.) Defendants argue Plaintiffs have failed to allege sufficient facts to establish Mr. Castro suffers from a qualifying disability and Mr. Castro was discriminated against by Defendant City of San Diego based on his disability. (Doc. No. 13-1 at 14–15.) The Court addresses Plaintiffs' ADA and Rehabilitation Act together because Defendants raise the same arguments for both claims and both "statutes provide identical 'remedies, procedures and rights.'" Vos v. Newport Beach, 892 F.3d 1024, 1036 (9th Cir. 2018).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under Title II of the ADA "a plaintiff generally must show (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefits of a public entity's services, programs or activities; (3) he was either excluded from participation in or denied the benefits of the public's entity's services, programs or activities or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of his disability." Vos, 982 F.3d at 1036 (citing Sheehan v. City and Cty. of San Francisco, 743 F.3d 1211, 1232 (9th Cir. 2014), reversed in part on other grounds, 135 S.Ct. 1765 (2015).

The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C § 12102(1). Plaintiffs' claim under the ADA is based on the first of these prongs. (Doc. No.

7, Am. Compl. ¶ 143.) "Physical or mental impairment" means "any mental or psychological disorder" including" emotional or mental illness." Klamut v. California Highway Patrol, 2015 WL 9024479, at *6 (N.D. Cal. Dec. 16, 2015) (citing 28 C.F.R. § 35.104). "[M]ajor life activities include…caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, reading, concentrating, thinking, communicating, and working." 42 U.S.C § 12102(2)(A). "[A] plaintiff must allege his disability with specificity" and "specify what major life activities the disability limits" to state a claim under the ADA. Alejandro v. ST Micro Electronics, Inc., 129 F.Supp.3d 898, 907–08 (N.D. Cal. Sept. 9, 2015).

Title II of the ADA applies to arrests. Sheehan, 743 F.3d at 1232. Where "police properly investigated and arrests a person with a disability for a crime unrelated to that disability," but "failed to reasonably accommodate the person's disability in the course of the investigation or arrest, causing the person to suffer great injury or indignity in that process than other arrestees," such failure violates the ADA. Hall v. City of Weed, 2021 WL 4078031, at *5 (E.D. Cal. Sept. 8, 2021) (citing Sheehan, 743 F.3d at 1232; see also Lavenant v. City of Palm Springs, 2018 WL 3807944, at *5 (C.D. Cal. Aug. 8, 2018); NAACP of San Jose/Silicon Valley v. City of San Jose, 2021 WL 4355339, at *17 (N.D. Cal. Sept. 24, 2021).

In the amended complaint, Plaintiffs allege that "Jose Castro was diagnosed with schizophrenia" and that due to his schizophrenia, Mr. Castro "was unable to care for himself." (Doc. No. 7, Am. Compl. ¶¶ 143, 145.) Plaintiffs allege that on October 19, 2020, Mr. Castro was exhibiting obvious symptoms of his mental illness. (Id. ¶¶ 149, 157.) Plaintiffs allege Mr. Castro's landlady called the police for help for Mr. Castro and told the police dispatcher Mr. Castro was unarmed except for a thin curtain rod. (Id. ¶ 24.) Upon arriving on scene, Plaintiffs allege the officers yelled at Mr. Castro to come out of his housed without clear instructions, even though Mr. Castro's mental illness had caused him to be fearful of voices from outside the house yelling at him. (Id. ¶¶ 21, 32.) Plaintiffs also allege none of the officers on scene called for a mental health expert or PERT assistance.

1  (Id. ¶ 109.) Plaintiffs allege that the officer's yelling caused Mr. Castro to run of his house

2  towards the officers, which resulted in Defendant Castillo shooting and killing Mr. Casto.

3  (Id. ¶¶ 38, 110.)

4      Plaintiffs have sufficiently alleged Mr. Castro suffered from a qualifying disability.

5  See Alejandro, 129 F.Supp.3d at 907–08 (N.D. Cal. 2015) ("By listing the specific

6  conditions from which Plaintiff suffers…bipolar disorder, generalized anxiety disorder,

7  and debilitating allegories…, Plaintiff satisfies the requirement that the FAC allege his

8  disability with specificity.") Plaintiffs have also sufficiently alleged the officers did not

9  reasonably accommodate Mr. Castro's schizophrenia when they interacted with him, which

10  directly led to Mr. Castro's death. As a result, Plaintiffs have alleged sufficient facts to

11  state a claim under the ADA and Rehabilitation Act, and so the Court declines to dismiss

12  Plaintiffs' ADA and Rehabilitation Act claims. Defendants' arguments are better suited for

13  a motion for summary judgment when the record is more fully developed.

14  **III.   Rule 12(f) Motion to Strike Analysis**

15      A.   Plaintiffs' § 1983 Claim for Wrongful Death

16      Defendants argue Plaintiffs' second cause of action for wrongful death pursuant to

17  § 1983 against Defendant Castillo should be stricken because it is duplicative of Plaintiffs'

18  first cause of action for excessive force pursuant to § 1983. (Doc. No. 13-1 at 16.) Plaintiffs

19  argue the two claims are not duplicative because a jury could award different types of

20  damages for each cause of action. (Doc. No. 16 at 3.) Plaintiffs also argue that Federal Rule

21  of Civil Procedure 8(d)(3) permits alternative theories on claims. (Id.) After reviewing the

22  amended complaint and the parties' contentions, the Court concludes Defendants have not

23  made a showing that Plaintiffs' second claim is "needlessly repetitive or wholly foreign to

24  the issues involved in the action." See Helstern v. City of San Diego, 2014 WL 294496, at

25  *1 (S.D. Cal. Jan. 24, 2014) (quoting J&J Sports Prods., Inc. v. Nguyen, 2014 WL 60014,

26  at *8 (N.D. Cal. Jan. 7, 2014)). The Court denies Defendants' motion to strike Plaintiffs' §

27  1983 claim for wrongful death.

28      B.   Putative Damages Against Defendant Nisleit

Defendants argue Plaintiffs' prayer for relief for punitive damages against Defendant Nisleit should be stricken because Plaintiffs have failed to allege Defendant Nisleit had the intent required for putative damages under § 1983. (Doc. No. 13-1 at 16–17.) Under Federal Rule of Civil Procedure 12(f), "a district court 'may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Wittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010). Defendants' motion to strike does not fall into any of the five Rule 12(f) categories. Instead, Defendants' motion challenges the sufficiency of part of Plaintiffs amended complaint, "which would be better suited for a Rule 12(b)(6) motion or a Rule 56 motion, not a Rule 12(f) motion." Id. The Court denies Defendants' motion to strike Plaintiffs' prayer for relief for putative damages against Defendant Nisleit.

C.   Individual Plaintiffs' Mental and Emotional Distress

Defendants argue paragraph 65 and all of paragraphs 85 and 116 of the amended complaint should be stricken. (Doc. No. 13-1 at 17.) Defendants argue paragraphs 65, 85, and 116 allege individual Plaintiffs' mental and emotional distress and are contained in Plaintiff's § 1983 claims. (Id.) Damages in § 1983 claims can only be recovered by the Estate and so Defendants argue such allegations are immaterial. (Id.)

Plaintiffs do not object to striking paragraphs 85 and 116. (Doc. No. 16 at 11.) Accordingly, the Court grants Defendants' motion to strike paragraphs 85 and 116. But Plaintiffs argue the allegations contained in paragraph 65 describe Mr. Castro's emotional distress and pain and suffering rather than the individual Plaintiffs'. (Doc. No. 16 at 11.) Such allegations are relevant as to whether the Estate can recover damages for Mr. Castro's pre-death pain and suffering under Chaudhry. 751 F.3d at 1103. See Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 974 (9th Cir. 2010) (internal citations omitted) ("Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being plead.") As a result, the Court denies Defendants' motion to strike portions of paragraph 65.

D.   Allegation Decedent was Arrested and Transported to Jail

Defendants argue paragraphs 158 and 159 of the amended complaint should be stricken. (Doc. No. 13-1 at 17–18.) Paragraphs 158 and 159 allege Doe Defendants #1 and #2 arrested Mr. Castro for criminal charges and failed to transport him to a mental health facility. (Doc. No. 7, Am. Compl. ¶¶ 158–59.) Defendants argue such allegations are "likely a typographical error" and are "immaterial." (Doc. No. 13-1 at 17–18.) Plaintiffs do not object to striking paragraphs 158 and 159. (Doc. No. 16 at 11.) The Court grants Defendants' motion to strike paragraphs 158 and 159 of the amended complaint.

## Conclusion

For the reasons above, the Court grants in part and denies in part Defendants' motion to dismiss and motion to strike. Specifically:

1.     The Court declines to dismiss the Estate's § 1983 claim for wrongful death against Defendant Castillo.

2.     The Court dismisses the individual Plaintiffs' § 1983 claim for failure to train against Defendant Nisleit without leave to amend. The Court declines to dismiss the Estate's § 1983 claim for failure to train against Defendant Nisleit.

3.     The Court dismisses the individual Plaintiffs' Monell claim against Defendant City of San Diego without leave to amend. The Court declines to dismiss the Estate's Monell claim against Defendant City of San Diego.

4.     The Court dismisses the individual Plaintiffs' wrongful death claim against Defendant Nisleit with leave to amend.

5.     The Court dismisses the Estate's Bane Act claim against Defendant Nisleit without leave to amend. The Court declines to dismiss the Estate's Bane Act claim against Defendants Castillo and City of San Diego.

6.     The Court declines to dismiss the Estate's ADA and Rehabilitation Act claims against Defendant City of San Diego.

7.     The Court strikes paragraphs 85, 116, 158, and 159 of the amended complaint. The Court declines to strike the Estate's § 1983 claim for wrongful death, Plaintiffs' prayer for relief of punitive damages against Defendant Nisleit, and paragraph

21-cv-01292-H-LL

65 of the amended complaint.

Plaintiffs must file their second amended complaint within **30 days** from the date this order is filed. Any amended complaint must cure the deficiencies noted in this order and must comply with Federal Rules of Civil Procedure 8 and 9..

**IT IS SO ORDERED.**

DATED: December 17, 2021

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

21-cv-01292-H-LL